THE EDGAR F. CONEY.

(District Court, S. D. Florida. April 15, 1918.)

1. TOWAGE ⬳15(2)—LIABILITY OF TUG—EVIDENCE.
   Where a heavily loaded lighter in tow capsized, evidence *held* insufficient to show that the towboat was in fault.

2. TOWAGE ⬳11(1)—SPEED—NEGLIGENCE.
   Where a lighter in tow capsized, the rate of speed, which could not have exceeded three miles per hour, cannot be deemed excessive, or indicating negligence on the part of the towboat.

3. TOWAGE ⬳15(2)—CAPSIZING OF VESSEL IN TOW—RES IPSA LOQUITUR.
   Where heavily loaded lighter in tow of a tug capsized at a time when the vessel was proceeding at a rate not in excess of three miles an hour, and there was nothing to show negligence on the part of the tug, the doctrine of res ipsa loquitur does not apply, and will not support a recovery against the tug.

In Admiralty. Libel by the Edwards Construction Company against the steam tug Edgar F. Coney; Philip Shore, claimant. Libel dismissed.

McKay, Withers & Phipps, of Tampa, Fla., for libelant.
Whitaker, Himes & Whitaker, of Tampa, Fla., for claimant.

CALL, District Judge. The libelant in this case hired the tug to tow a loaded lighter from a dock in Tampa to Point Pinellas. About 12 o'clock on the night of January 9, 1914, the tug made fast to the lighter, which had been loaded with iron rods, iron pipe, certain goods, a hoisting engine, and an upright boiler by the libelants, and started on her voyage. In about three hours she had reached a point off Gadsden Point, some 12 or 14 miles from the point of departure, when the lighter turned over and the cargo went overboard. Some of it was lost entirely, and a portion salvaged. For the damage caused the libelant by the loss of goods and expenses of salvage of the lighter and the property saved, they seek by these proceedings to recover, on the ground that the lighter was overturned by the negligent manner in which it was towed.

This negligence is denied in the answer, and it is further contended that the overturning of the lighter was due to the manner in which it was loaded, and due to the leakage into the lighter while being towed. After reviewing the testimony taken by the parties to maintain their different contentions, I find that the facts material to a decision of the case may be concisely stated as follows:

[1-3] The libelant, during the day of January 9th, chartered the Coney to tow the lighter from Tampa to Point Pinellas on Tampa Bay. That the libelant loaded the lighter with property, and in the night of January 9th, a little after 12 o'clock, the tug made fast to this lighter with a 300 foot tow line by a bridle, and commenced her voyage. The night was calm and starlit. Behind this lighter was another and smaller lighter, made fast at the rear corners by short lines about 4 feet long, and behind this last lighter a motor towboat and several

small boats were being towed. That everything went well until about 3 o'clock in the morning of January 10th, when the lighter was discovered over to the starboard of the wake of the tug, and immediately overturned. The captain of the tug, who was sitting aft of the pilot house watching the tow, saw the light hanging on the upright boiler turn over to starboard. This boiler and engine was loaded near the starboard corner of the lighter as she was being towed. The proof further shows that the lighter was not making water while at the dock being loaded, but according to the testimony of witnesses the strain of towing and piling up of water on the front of the lighter while being towed will cause leakage in lighters otherwise tight when lying at a dock. The testimony also shows that this was a deck lighter, carrying all cargo on the deck, and that it was heavily loaded, drawing some 3½ feet of water, with 12 to 18 inches freeboard. No one from the tug could see the lighter, but only the light on the upright boiler was visible.

· The cause of the overturning of the lighter is the main question to be determined. No one saw just how it occurred. The libelant contends that it was due to a sudden change of course of the tug. The only testimony upon which this claim could be based was that of a fireman, who had come up from the fire room of the tug a few moments before and was sitting on the rail, where he could watch his gauges, and the fact that the lighter was to the starboard of the tug's wake. The testimony of the fireman impresses me with little force, because at night it would be impossible for one sitting on the rail of the tug to tell whether the change of direction was due to the change of the course of the tug or the sheer of the tow, and in addition to this there is the positive testimony of the wheelman, an experienced man, to the contrary; nor would the position of the lighter, when seen by the witnesses, support this contention against the testimony of the wheelman, as it is abundantly shown by the testimony that lighters do take sheers for which no satisfying reason can be given. But, when water has accumulated in lighters, they are more liable to sheer than when free of water.

I am unable from this testimony to find that the overturning of the lighter was due to the action of the wheelman. Nor do I think the evidence shows it was due to excessive speed at which the lighter was being towed. Taking the distance from Tampa when the overturning occurred, the time consumed in making that distance, and the force of the ebb current favoring the boat, the rate of travel through the water could not have exceeded 3 miles per hour, a speed not excessive, or indicating negligence on the part of the towboat. Nor do I think the testimony shows a case falling under the doctrine of res ipsa loquitur. If the proof does not establish negligence on the part of the towboat, the libelant cannot recover. In this case I do not find that the tug or tow was negligently managed, and therefore the libelant cannot recover in this proceeding.

A decree will be entered, dismissing the libel, at the cost of the libelant.